CarutheRS, J.,
delivered the opinion of the Court.
St. John sued the Railroad Company for running over and killing his slave, about eight years old, and recovered damages to the amount of $962 33.
There is no controversy as to the fact, but the defense relied upon is, that the circumstances were not such as to make the Company liable for damages. Objection is taken to the charge of the Court in this, “that it was the duty of the engineer to use the utmost care and skill in the discharge of his duty by a vigilant and careful look-out for objects on the track, to blow the whistle and check speed when necessary to protect life and property; that if injury could have been avoided by the utmost care and skill by a careful and vigilant look-out for objects ahead, by giving proper signals, or by checking speed, the defendants would be liable for the value of the boy.” And further, “that if the injury was occasioned by running the cars at too great speed, at that particular point on the road, that would be such negligence as would render the defendants liable in damages; that if the negro boy was seen, or might have been discovered, if the engineer had kept a vigilant look-out for objects ahead on the track, in time to save his life, by checking speed, or blowing the whistle, this would be such negligence as to make the Company liable.”
The Court refused to charge as requested by defendant’s counsel, to the effect, that in order to make the Company liable, it must be made to appear that the negro and his master “ exercised the utmost care and diligence in avoiding danger,” and if the negro was too *527 young, then his master must ,do it, and the failure to do- so, was “gross and inexcusable negligence,” and that in this case the plaintiff was virtually a trespasser, and not entitled to recover. But the Oourt refused to charge except as above stated.
We are aware that there is much discrepancy in the railroad cases of \the different States, and still the principles of law which should govern them, being derived from the same sources, it would seem, should be uniform, and perhaps would be more nearly so, but for the statutory changes which have been made by the several States.
The policy of our own decisions has been, so far as consistent with the safety of life and property, to encourage and protect this most grand and useful ím provement of the age. But the consequences of care lessness and want of due skill in their management are so frightful and appalling that the most strict and rigid rules of accountability must be applied, where there is any dereliction of duty. Every reasonable precaution must be used to avoid accidents and injury to others, at the peril of strict and ample accountability. They enjoy almost a monopoly in the business of common carriers, wherever they exist, both as to persons and property. A necessity to patronize them is imposed upon all, by the circumstances of the times, all other modes of travel and transportation having been superseded by this on account of its greater ease and astonishing speed.. While on the one hand the Courts should protect them with a strong hand against unjust demands, and injuries to their property, which popular prejudice may favor or inflict, on the other the security of life and property *528 requires that they should he held to a strict, careful, and skilful performance of all the duties imposed upon them by law.
All will agree, however, that in the management of locomotives and trains, so powerful for mischief, as well as good, the rules of liability for the destruction of life or property should he such as to impose the duty of very great care and diligence on the part of those who control them. In addition to the general requirements of the common law, that reasonable care and diligence shall be used, our statutes prescribe some things that shall he done by them to avoid injury to others. By the act of 1856, ch. 94, sec. 8, a constant and vigilant look-out for objects on the road shall be kept up, and if any person, or stock, or other obstructions shall appear on the road, it is made the “ duty of the engi neer to blow the alarm-whistle, to put down on the brakes, and use all necessary means to stop the trains, and prevent the killing or injuring of persons, stock, or property." The 9th section makes the Company responsible for all damages accruing or resulting from a failure to perform said duty.” The 10th section exonerates them from liability for injuries done to “persons, stock, or other property on their respective roads, if they shall have complied with the provisions of this act,” hut the proof shall devolve upon them. This act was intended as a modification of the very severe statute of 1853, ch. 33, by which they were made liable at all events, and without regard to the care and precaution used by them.
Without reference, then, to the general rules of law on this subject, these statutes seem to have settled the *529 test of liability- in reference to all cases like tbe one now before us. But tbis occurred before the act of 1856, and must be governed by that of 1858, or the common law; and upon either, we think the verdict right. In such a case as this, we think it not too strong to require the “ utmost care and diligence,” as charged by the Court.
The negro boy of the plaintiff was asleep upon the road at a water-gap; he could have been seen a quarter of a mile before the place was reached by the locomotive, but was at first supposed to be a coat of one of the repair-hands, but then, on a nearer approach was discovered to be a person, and no signal or alarm was given, or any attempt to check speedy by letting the brakes. They were then moving at rapid speed, but according to schedule at -that part of the road. The excuse relied upon for not adopting the means necessary to avoid the destruction of .life and property, is that they would have been ineffectual, on account of their proximity to the object, when they discovered what it was. The law, as applied to the facts of this case, makes no such exception, and none such should be made. The sound of the whistle might have aroused the boy from sleep, or by the checking of speed, upon letting down the brakes, he might have saved himself in an instant, by falling into the ditch at the stock-gap, where he was lying, or dashing off the road on either side. But whether he would or could have done so, is not the question; their duty was the same, whether he would have escaped or not; of that they were not to be the judges; the injunctions of the law upon them were peremptory. The consequence of disregarding this legal *530 duty is unconditional liability for tbe damage done in this sort of ease.
Tbe defendants, then, cannot complain at tbe charge of the Court, for it was certainly not too strong against them. Though the rules of liability may not be precisely laid down, yet the instructions given are at least sufficiently favorable to the defendants. The duty enforced by the statute is plain and easy, and much better for these companies than the less certain rules of common law, depending on skill, diligence, and care for exoneration, or certain degrees of negligence for liability. But by either, the charge and judgment are right.
These plain and arbitrary rules, laid down by the Legislature, on this subject, will free us, in cases falling under the statute, from the difficulty of reconciling the conflicting decisions of other States, or entering upon the doctrine of excusatory defense presented in the application made to the Court by the defendant’s counsel for instructions to the jury, and which was, therefore, properly refused. If the questions presented in the instructions asked, arose in the case, the authorities relied upon would be examined. But they do not, as a child eight years old, and asleep, at that, could not be charged with negligence, though possessed of reason, volition,' and the power of locomotion. The principle insisted upon is correct, that' negligence and want of proper care on the part of the person injured, would defeat a claim for damages under, certain circumstances. But that principle has no application to this case. Certainly the master was not required to watch his negro children, and keep them away from the road.
The judgment was right, and will be affirmed.